UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK A. PRICE,

          Plaintiff,

v.

LORI ANN EIRING, *et al.*,

          Defendants.

_____/

Case No. 1:09-cv-85

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

The *pro se* plaintiff filed this action alleging numerous violations of federal and state law. This matter is now before the court on the following: a motion to dismiss plaintiff's amended complaint filed by defendants General Motors Acceptance Corporation (GMAC) and Semperian (docket no. 19), a motion to dismiss filed by defendants Kellie Klingaman, State Farm Insurance Company (sometimes referred to as "State Farm") and Janis Lancaster (docket no. 21), a motion to dismiss filed by defendant Lawrence Korolewicz (docket no. 22), a motion to dismiss for lack of jurisdiction by defendant Lori Ann Eiring (docket no. 43), plaintiff's motion to file a second amended complaint (docket no. 30), and Lori Ann Eiring's motion to strike plaintiff's second response filed to her motion to dismiss (docket no. 51).

### I.      Plaintiff's state court case

In a previous motion to dismiss, defendant State Farm provided the court with copies of documents from a previous state court case filed by plaintiff and his wife, *Mark and Katina Price v. State Farm Mutual Insurance Company*, No. 2007-98-CK (Cass County Cir. Ct.). The allegations

made in the state court case and the disposition of that case provides background for plaintiff's claims alleged in this federal action.

In this previous state court action, in which plaintiffs were represented by counsel, plaintiffs alleged breach of contract (Count I) and fraud (Count II). *See* docket no. 8-3. The breach of contract claim arose from an alleged breach of the insurance contract between the parties. *Id.* The fraud claim was somewhat more involved. Plaintiffs alleged that they owned two GMC Silverado trucks. *Id.* One truck was destroyed by the fire and had a payoff balance of about $15,000. *Id.* A second truck, not destroyed by the fire, had a payoff balance of about $8,000. *Id.* In October 2006, State Farm allegedly paid off the wrong truck, i.e., instead of paying the $15,000 owed, paid only $8,000. *Id.* The State Farm agent concealed this error from plaintiffs and then applied for a "scrap title" from the Michigan Secretary of State in February 2007, "knowing specifically that she had not paid off the vehicle for which she was applying for a scrap title, but that the entire amount was still due and owing." *Id.* The agent obtained the scrap title and then lied to plaintiffs that the loan to GMAC was paid off. *Id.* Plaintiffs were later sued on the loan by GMAC and a default judgment entered against them. *Id.* Plaintiffs obtained proof of State Farm's fraud from GMAC. *Id.*

On or about August 20, 2008, the state court dismissed the fraud claim with prejudice and denied plaintiffs' motion for reconsideration. *See* docket nos. 8-4, 8-5. On or about October 17, 2008, the state court dismissed the remaining breach of contract claim and closed the file. *See* docket no. 8-6. The court later denied plaintiffs' motion for reconsideration. *See* docket no. 8-7. On or about February 9, 2009, the court denied plaintiffs' motion for relief from judgment. *See* docket no. 8-8. Throughout the state proceedings, State Farm was represented by defendant

Korolewicz. *See* docket nos. 8-4 through 8-8. The court takes judicial notice that plaintiffs appealed the Cass County Circuit Court's order and that the appeal has been dismissed. *See Mark Price v. State Farm Mutual Insurance Co.*, No. 288816 (Mich. App.) (Order of dismissal, May 7, 2009).

## II.    Plaintiff's federal action

On February 4, 2009, plaintiff filed a 16-page complaint, which included 152 pages of exhibits and alleged 32 causes of action against defendants. *See* docket no. 1. Defendants filed dispositive motions pointing out various deficiencies in the complaint. In response to these motions, plaintiff filed an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A) (allowing plaintiff to amend his pleading once as a matter of course before being served with a responsive pleading). Plaintiff's amended complaint is substantially shorter, consisting of seven pages and alleging seven causes of action. *See* docket no. 18. Defendants moved to dismiss the amended complaint. Plaintiff did not file any responses to these motions. Rather, approximately three months later, plaintiff moved to file a second amended complaint, consisting of 142 paragraphs of allegations and 19 causes of action. *See* docket no. 30.

## III.    Plaintiff's First Amended Complaint

This matter is before the court on the allegations as set forth in plaintiff's amended complaint. *See* docket no. 18. Plaintiff names eight defendants: Lori Ann Eiring is a notary public in the State of Colorado, formerly employed by Semperian, a wholly owned subsidiary of GMAC .[1] Amend. Compl. at ¶ 8. Shonuette Galles, of Greeley, Colorado, was also formerly employed by Semperian. *Id.* at ¶ 9. GMAC is a finance company, with a post office box located in Greeley,

---

[1] Plaintiff sometimes refers to "GMAC" as "General Motors Acceptance Corporation LLC" and "GMAC LLC."

Colorado.  *Id.* at ¶ 10.  Semperian is an entity, located in Southfield, Michigan, which plaintiff identified as the "employer."  *Id.* at ¶ 11.  "State Farm Insurance Company" is located in Bloomington, Illinois, aka "State Farm Fire and Casualty Company" and aka "State Farm Mutual Automobile Insurance Company."  *Id.* at ¶ 12.  Kellie Klingaman is identified as a "State Farm Claims Adjuster," and a claim representative for State Farm Insurance Company aka State Farm Fire and Casualty Company  and aka State Farm Mutual Automobile Insurance Company.  *Id.* at ¶ 13. Lawrence Korolewicz is an attorney licensed in Michigan, and affiliated with the law firm of Foster, Swift, Collins & Smith, P.C. in Grand Rapids, Michigan.  *Id.* at ¶ 14.  Finally, Janis Lancaster is located in Bloomington, Illinois, and is identified as a "Claim manager Illinois operation center [sic]."  *Id.* at ¶ 15.

Plaintiff summarizes his claim in the "Introduction" and "Facts" to his amended complaint:

1.  On March 8th 2006 Plaintiff suffered a fire loss at his home in Cass County, Michigan resulting in a total loss of his home, as well as damage to 1 vehicle, and total destruction of 3 others, Plaintiff was insured by State Farm Fire and Casualty Company, and State Farm Mutual Automobile Insurance Company, at the time of the loss.

2.  The damaged vehicle, and 1 of the 3 totally destroyed were financed through General Motors Acceptance Corporation, LLC.

3.  During adjustment of this claim, State Farm Insurance had this claim handled by Kellie Klingaman, as an employee of both State Farm Fire and Casualty Company, and State Farm Mutual Automobile Insurance Company.

4.  During the adjustment of this claim, State Farm Insurance had this claim handled by Larry Korolewicz, as attorney for both State Farm Fire and Casualty Company, and State Farm Mutual Automobile Insurance Company.

*        *        *

4

17. During the adjustment of this claim, mistakes were made in processing of the claim for Plaintiffs' 2003 Chevrolet Truck VIN "1GCHK29U13E298936."

18. State Farm Mutual Automobile Insurance Company, breached the contract, and never paid for the vehicle. VIN "1GCHK29U13E298936."

19. State Farm Mutual Automobile Insurance Company, through its employee Kellie Klingaman, and attorney Larry Korolewicz, schemed to cover this breach, and retain the additional money owed to Plaintiff by, conspiring with employees of GMAC LLC/Semperian, to forge a vehicle release, accuse Plaintiff of fraud, sue Plaintiff, and defame him.

20. Due to this scheme Plaintiff has been injured in his finances, his credit rating, his job, and his credibility.

Amend. Compl. at ¶¶ 1-4, 17-20.

Plaintiff has alleged seven causes of action. First, that State Farm Insurance was unjustly enriched in excess of $140,000.00 "through a scheme to deny Plaintiff any additional benefits owed, IE Additional Living Expense, and Replacement Cost Benefits." *Id.* at ¶¶ 22-23. Second, a civil conspiracy to produce a "forged/fraudulent document," which began in January 2007, when "GMAC agreed to sue Plaintiff, but provide release to State Farm Mutual Automobile Insurance Company." *Id.* at ¶ 25. Specifically, "[o]n January 29th 2007 Kellie Klingaman, Lori Eiring, and Shonuette Galles (SIC) conspired to produce a lien release document showing GMAC to have been fully paid, for vehicle VIN '1GCHK29U13E298936' although GMAC had received no money for this vehicle." *Id.* at ¶ 26.

Third, that defendants violated 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment. This claim arises from the alleged misuse of a state notary seal. Plaintiff alleged that Lori Eiring "decided that State Farm Mutual Automobile insurance had paid the

equivalent of money owed to GMAC through payments alleged to have been paid To or on behalf of Plaintiff, and without Due Process of Law Plaintiffs collateral was released to State Farm Insurance." *Id.* at ¶ 28. Shonuette Galles "produced a lien release document showing GMAC to have been fully paid, for vehicle VIN '1GCHK29U13E298936'" and Lori Eiring "using her State granted power of Notary [i.e.,] the Notary seal, She affixed her seal to a fake document." *Id.* at ¶ 29.

Fourth, that defendants violated 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff alleged that defendants engaged in a "scheme to obtain clear title." *Id.* at ¶ 31. He outlines the scheme as follows. The "fake document" was faxed on January 29, 2007 from GMAC to Kellie Klingaman. *Id.* at ¶ 31. On February 15, 2007, State Farm Insurance Company faxed the "fake document" to Auto Salvage Auction. *Id.* at ¶ 33. On February 21, 2007, Auto Salvage Auction mailed the "fake document" to the Michigan Secretary of State. *Id.* at ¶ 35. Then, on February 23, 2007, the Michigan Secretary of State mailed the "fake document" bcak to the Auto Salvage Auction, which "completed the civil conspiracy scheme to provide State Farm Mutual Automobile Insurance Company clear title to vehicle VIN '1GCHK29U13E298936' without paying for it." *Id.* at ¶ 37. Plaintiff also alleged that through this activity, State Farm Mutual Automobile Insurance Company "committed securities fraud' by fraudulently obtaining title to the vehicle. *Id.* at ¶ 39.

In his Fifth Cause of Action, plaintiff alleged breach of fiduciary duty and "silent fraud." Plaintiff alleged that State Farm Mutual Automobile Insurance Company was under a fiduciary duty to make payment in full to GMAC for the vehicle, and GMAC owed a fiduciary duty to plaintiff not to release his collateral in the vehicle to a third party. *Id.* at ¶¶ 41-42. With respect

to "silent fraud," plaintiff alleged that "defendants" owed a duty to plaintiff "to inform him of their mistakes, and seek his help in repairing them." *Id.* at ¶ 44. Instead, defendants chose to "use their respective positions to assert control over [plaintiff's] property." *Id.* at ¶ 45. When plaintiff was about to expose defendants and threatened legal action, defendant Klingaman assured him that State Farm Mutual Automobile Insurance Company had paid for the vehicle. *Id.* at ¶ 46. When plaintiff asked specific written questions about the vehicle in June, July and August 2007, State Farm Mutual Automobile Insurance Company, through its employees defendants Lancaster, Klingaman and (non-defendant) Linda Mathews, and their attorney, defendant Korolewicz, "remained silent to the truth, and in fact provided Plaintiff with false and misleading information." *Id.* at ¶ 47.

Sixth, plaintiff asserted another RICO claim for "obstruction of justice (fraud upon the court)." Plaintiff alleged that in furtherance of the scheme to deny additional payments to plaintiff and to prevent the lies from being exposed, defendant Korolewicz, on August 11, 2007, "presented the Court with the release that had been obtained in January of 2007 by State Farm Mutual Automobile Insurance Company," lied about the fact that he had just discovered it, lied about the fact that he and Klingaman had previously searched for the release, and made other representations to the Court that were lies. *Id.* at ¶¶ 49-52. Plaintiff's allegations regarding "the Court" apparently refer to plaintiff's unsuccessful Cass County Circuit Court action against State Farm.

Sixth, plaintiff asserted a claim under 18 U.S.C. § 1962 (RICO) of "obstruction of justice (false swearing, fraudulent affidavit)." Plaintiff alleged that defendant Korolewicz produced

7

a fraudulent affidavit to "the Court" and "planted evidence" in an attempt "[t]o prevent the lies being exposed." *Id.* at ¶¶ 54-56.[2]

Plaintiff seeks a declaratory judgment to enjoin defendant Korolewicz from the practice of law, damages for "the monies fraudulently withheld by the defendants," triple damages under RICO and punitive damages.

## IV. Defendants motions to dismiss for failure to state a claim

### A. Legal Standard

Defendants move to dismiss plaintiff's action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[3]

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12

---

[2] In a paragraph entitled "Jurisdiction and Venue," plaintiff states that defendants have violated "15 USC 1681 Fair Credit Reporting Act" and "15 USC 1692 Fair Debt Collection Practices Act." *Id.* at p. 1. Plaintiff, however, has made no allegations to support these claims and none of his causes of action seek relief under these statutes. While the court is required to liberally construe this pro se complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), it may not re-write the complaint to include claims that were never presented. *Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). For this reason, the court does not consider claims under these two statutes to be part of this action.

[3] Defendant Eiring joined in the motions. *See* docket no. 43-2. Defendant Galles has not appeared in this action.

(6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

## B. Failure to state a claim under RICO

Defendants contend that plaintiff has failed to state a cause of action under RICO.

### 1. Elements of a RICO claim

RICO provides in relevant part that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Under RICO, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," while a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3), (4).

To prove a RICO violation, a plaintiff must show:

> 1) there were two or more predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to his business or property by reason of the above.

*Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993).

### 2. Plaintiff has not alleged the existence of an enterprise engaged in a pattern of racketeering activity

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Here, plaintiff has alleged that defendants performed the predicate acts of the alleged RICO violation. However, he has not identified any "enterprise" other than the individual defendants. Plaintiff cannot maintain an action against defendants as both the "enterprise" that engaged in alleged racketeering and the person or business entity subject to civil liability under the RICO statute. "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000). *See Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44-45 (1st Cir. 1991) ("[w]e have consistently interpreted the statutory requirement that a culpable person be 'employed by or associated with' the RICO enterprise as meaning that the same entity cannot do double duty as both the RICO defendant and the RICO enterprise"); *Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1297 (D.N.J. 1990) ("[a]n enterprise must exist separately and apart from the RICO defendant"). In the absence of an "enterprise" independent of the individual defendants, plaintiff cannot allege a RICO violation.

### 3. Plaintiff has not alleged a "pattern of racketeering activity"

Next, plaintiff has failed to allege that defendants engaged in at least two predicate acts of racketeering.

To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a "pattern of racketeering activity" consisting of at least two predicate acts of racketeering activity occurring within a ten-year period. 18

U.S.C. § 1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343). 18 U.S.C. § 1961(1).

*Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

Plaintiff alleged as predicate acts that defendants engaged in wire fraud and obstruction of justice with respect to the "fake document." However, he has failed to demonstrate the continuity of these predicate acts required to allege a RICO violation. "In addition to 'relatedness,' the predicate acts pleaded must have sufficient 'continuity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006). The continuity is either open-ended or close-ended. *Id.* "A closed period of continuity may be demonstrated by proving a series of related predicates extending over a substantial period of time." *Id.* at 725 (internal quotation marks omitted). On the other hand, open-ended continuity "turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future." *Id.* at 726.

Here, plaintiff has alleged neither open-ended nor close-ended continuity. Assuming that the alleged "scheme" extended from January 29, 2007 (the date that Klingaman,Eiring and Galles "conspired" to produce a lien release) until February 23, 2007 (when the Michigan Secretary of State "completed the civil conspiracy scheme"), this time frame of less than one month is insufficient to show a close-ended continuity claim under RICO. *See id.* at 725 (predicate acts extending over six or seven months not sufficient to show a close-ended RICO claim (citing *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992)) nor even predicate acts extending over 17 months (*citing Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994)). Even if the court were to assume that defendant Korolewicz participated in the alleged scheme as late as August 11, 2007, this is still an insufficient time period to show continuity. *Id.*

In addition, an alleged "scheme" arising from a dispute involving an ordinary business contract does not possess the requisite RICO continuity. *Id.* at 726. As the Sixth Circuit explained in *Moon*, alleged wrong-doing in course of a business transaction (such as fraud) does not become transformed into a RICO claim:

> Similarly, in *Thompson v. Paasche*, 950 F.2d 306 (6th Cir.1991), the plaintiff landowners asserted RICO claims against the defendant seller on the grounds that the seller fraudulently represented that the purpose of his reservation of oil and gas rights as part of the terms of the sales was to ensure that the land remained unspoiled. *Id.* at 309. In fact, claimed the plaintiffs, the seller had arranged to lease the oil and gas rights to a third party who would undertake drilling. *Id.* at 309-10. This Court reversed the RICO verdict for the plaintiffs, concluding that the alleged RICO scheme ended once the defendant had sold all of his lots to the plaintiffs, and therefore it was "insufficiently protracted to qualify as a RICO violation." *Id.* at 311; *see also Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 19 (1st Cir.2000), cert. denied, 532 U.S. 905, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001) (where the plaintiff alleged a pattern of racketeering acts focused on coercing him into relinquishing his ownership interest in a real estate development project, the court characterized the alleged racketeering activities as "finite in nature" and occurring over a "relatively modest period of time," thus foreclosing a finding of closed-period continuity); *Edmondson & Gallagher v. Alban Towers Tenants Assoc.*, 48 F.3d 1260, 1265 (D.C.Cir.1995) ("We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim.").

*Moon*, 465 F.3d at 726.

Furthermore, plaintiff has not alleged any facts to suggest that the scheme in this case involves open-ended continuity. Open-ended continuity can be pled through facts showing "a distinct threat of long-term racketeering activity," or by showing "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *See id.* at 726-27, quoting *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 242 (1989). The alleged scheme in this case involved a single auto insurance claim. Such an allegation does not show either a distinct threat of long-term racketeering or that this is an entity's regular way of doing business.

Accordingly, plaintiff's RICO claims alleged against defendants in the Fourth, Sixth, and Seventh Causes of Action should be dismissed.

### C.    Plaintiff's § 1983 action

Plaintiff's Third Cause of Action seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In this claim, plaintiff alleged a Fourteenth Amendment Due Process violation arising from Ms. Eiring's alleged act of affixing her notary seal on the "fake document."  *See* Amend. Compl. at ¶¶ 27-29.  Ms. Eiring is the only defendant that could conceivably fall within a § 1983 claim.[4]  None of the other defendants acted "under color of state law."  For this reason, all defendants, except for Eiring, are entitled to dismissal of the § 1983 claim.

Accordingly, defendants GMAC, Semperian, Klingaman, State Farm Insurance Company, Janis Lancaster and Lawrence Korolewicz are entitled to dismissal of the § 1983 claim as alleged in plaintiff's Third Cause of Action.

---

[4] Courts have observed that a notary public is granted certain powers and authority under state law. *See, e.g., Daniel v. Safir*, 135 F. Supp. 2d 367, 375-76 (E.D. N.Y. 2001) (in dismissing § 1983 action against notary public who committed alleged act in his capacity as a computer salesman, court distinguished this activity from "actions taken in his capacity as a notary public"); *Krueger v. Miller*, 489 F. Supp. 321, 328 (E.D. Tenn. 1978) (notary public appointed under Tennessee law is clothed with authority from the state to use the power of that office).

## V.     Ms. Eiring's motion to dismiss for lack of jurisdiction

Ms. Eiring moves to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

As a preliminary matter, Ms. Eiring has moved to strike plaintiff's second response filed in opposition to her motion (docket no. 51). The record reflects that plaintiff filed a response to the motion on September 9, 2009, and then after Ms. Eiring filed her reply, plaintiff filed a second response. *See* docket nos. 45, 48 and 49. Plaintiff may not file an additional response or sur-reply to a dispositive motion without court approval. *See* W.D. Mich. LCivR 7.2(c). Accordingly, Ms. Eiring's motion to strike should be granted.

"In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction." *Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007), citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). Where the district court relies solely on written submissions to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). *Air Products and Controls*, 503 F.3d at 549. The pleadings and affidavits (if any) submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal. *Id.* (internal quotation marks omitted).

Plaintiff alleged that Ms. Eiring is a notary public in Colorado. The issue before the court is whether she is subject to the court' s jurisdiction in this action. Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question (such as plaintiff's § 1983 claim), personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The relevant inquiry for the court is whether the facts of the case demonstrate that the nonresident defendant possesses such "minimum contacts" with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant's connection with the forum state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297 (1980).

Ms. Eiring is not subject to Michigan's general personal jurisdiction statute, M.C.L. § 600.701, which grants the state jurisdiction over individuals who are either present or domiciled in Michigan at the time process is served, or who consent to Michigan's jurisdiction. It is undisputed that Ms. Eiring resides in Colorado, was served there and has not consented to Michigan's jurisdiction.

Michigan's long-arm statute providing for limited personal jurisdiction , M.C.L. § 600.705, provides as follows:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705.

Plaintiff's role as a notary public, working in Colorado for a subsidiary of GMAC, does not fit neatly within any of these categories. Assuming that she committed the fraud alleged by plaintiff the only conceivable subsection applicable to Ms. Eiring would be § 600.705(2). Assuming that Ms. Eiring abused her notary authority, negligently used her notary authority or committed fraud through this authority, then she could reasonably anticipate being sued or prosecuted in Colorado, the state where she operated as a notary office and where the alleged fraud occurred. However, as a notary public residing in Colorado, the court concludes that Ms. Eiring had no connection with Michigan such that she "should reasonably anticipate being haled into court there." *See World-Wide Volkswagen*, 444 U.S. at 297. Accordingly, the court concludes that Ms. Eiring's motion to dismiss for lack of jurisdiction should be granted.

## VI.    *Rooker Feldman* **doctrine**

Defendants State Farm, Klingaman and Lancaster also move to dismiss under the *Rooker Feldman* doctrine.    *See District of Columbia Court of Appeals v. Feldman*, 460 U.S.462 (1983); *Rooker v. Fidelity Trust* Co., 263 U.S. 413 (1923). *Rooker* and *Feldman* "exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280, 291-92 (2005).  In these two cases, "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.*   Because § 1257 vests authority to review a state court's judgment solely in the United States Supreme Court, the district courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction to review the state court judgment.  *Id.*

Under the *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). *See Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002) (the *Rooker-Feldman* doctrine establishes that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings").   As the Supreme Court explained, "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

The Sixth Circuit has recognized two elements to a *Rooker-Feldman* analysis. *See, e.g., Tropf v. Fidelity National Title Insurance Company*, 289 F.3d 929, 937 (6th Cir. 2002). First, for the *Rooker-Feldman* doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. *Tropf*, 289 F. 3d at 937; *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id. See also, Executive Arts v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (a federal claim is "inextricably intertwined" with a state court judgment for purposes of the *Rooker-Feldman* doctrine, when the federal claim succeeds only to the extent that the state court wrongly decided the issues before it). "Second, the *Rooker-Feldman* doctrine precludes federal court jurisdiction where the claim is a specific grievance that the law was invalidly -- even unconstitutionally -- applied in the plaintiff's particular case." *Tropf*, 289 F.3d at 937 (internal quotations omitted).

Here, plaintiff's claims are "inextricably intertwined" with plaintiff's litigation for against State Farm in the Cass County Circuit Court. The state court dismissed plaintiff's claim that State Farm engaged in fraud with respect to the issuance of the title. While plaintiff has attempted to interject new claims in this action, it appears to the court that his claims in the present suit are an attempt to reject the state court's judgment. This type of federal court review is prohibited by the *Rooker-Feldman* doctrine. *See Exxon Mobil*, 544 U.S. at 291-92; *Tropf*, 289 F. 3d at 937. In the

absence of the alleged fraud committed by State Farm, which lies at the heart of plaintiff's lawsuit and upon which all other claims arise, all of plaintiff's claims fail. Accordingly, all defendants are entitled to dismissal under the *Rooker-Feldman* doctrine.

### VII. Supplemental Jurisdiction

In the alternative, if the court determines that some of plaintiff's state law claims remain, then these claims should be dismissed. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against this defendant. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the court has rejected plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state

law claims.  Accordingly, the court should dismiss all of the state law claims asserted against defendants.

## VIII.   Motion for second amended complaint

Finally, plaintiff has moved to file a second amended complaint (docket no. 30).  This motion is improperly filed.  Plaintiff has not filed a supporting brief as required by W.D. Mich. LCivR 7.1(a).  In addition, plaintiff did not seek concurrence from opposing counsel to determine if the motion would be opposed nor affirmatively state his efforts to seek concurrence as required by the local court rules.  *See*  W.D. Mich. LCivR 7.1(d).   For these reasons, plaintiff's motion should be denied.[5]

## IX.   Recommendation

For the reasons set forth above, I respectfully recommend that:

Defendants  GMAC  and  Semperian's  motion  to  dismiss  (docket  no.  19)  be **GRANTED**;

Defendants Klingaman, State Farm and Lancaster's motion to dismiss (docket no. 21) be **GRANTED**;

Defendant Korolewicz's motion to dismiss (docket no. 22) be **GRANTED**;

Defendant Eiring's motion to dismiss for lack of personal jurisdiction (docket no. 43) be **GRANTED**;

---

[5] Furthermore, the second amended complaint, which consists of 19 counts, including additional claims of wire fraud and state law torts, appears to be a futile attempt to remedy the fatal flaws that existed in plaintiff's original complaint and amended complaint.  While the court should freely give leave to amend a complaint pursuant to Fed. R. Civ. P. 15(a), "[a] district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile."  *Kottmyer v. Maas*,  436 F.3d 684, 692 (6th Cir. 2006).

Defendant Eiring's motion to strike plaintiff's second response (docket no. 51) be

**GRANTED**; and,

Plaintiff's motion to file a second amended complaint (docket no. 30) be **DENIED**.


Dated:  February 16, 2010                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge




ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).